James Taylor YOKELY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14798.

United States Court of Appeals Ninth Circuit.

Oct. 3, 1956.

Davis, Renfrew & Hughes, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., James M. Fitzgerald, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and BOLDT, District Judge.

STEPHENS, Circuit Judge.

Appellant, James Yokely, and Lena Mae Wilkins were charged in a two count indictment with two violations of Title 18 U.S.C.A. § 371 for conspiring to violate the laws of the United States to wit: Section 2422, Title 18 U.S.C.A. namely transporting within a possession of the United States a female person on the line of an interstate carrier with the intent and purpose that said person engage in the practice of prostitution and debauchery.

Count One of the indictment charged appellant and his co-conspirator, Lena Mae Wilkins, on or about the 8th day of April, 1954, conspired to send Lena Mae Wilkins from Anchorage to Fairbanks, Alaksa, via Alaska Airlines for the purpose of engaging in prostitution, in violation of Section 2422 of Title 18 U.S. C.A. Three overt acts were alleged in this count; the payment to Lena Mae by appellant of $33.00 for airplane fare to Fairbanks, the driving of Lena Mae to the Anchorage airport by appellant, and the subsequent travel by Lena Mae to Fairbanks via Alaska Airlines.

Count Two charged that on the 13th day of April, 1954, at Fairbanks, Alaska, appellant and Lena Mae Wilkins conspired to send Lena Mae from Fairbanks to Kodiak, Alaska, on an interstate carrier, for the purpose of prostitution in violation of Section 2422 of Title 18 U.S.C.A. Two overt acts were alleged in this count; the payment by appellant to Lena Mae of $75.00 to purchase the required airline ticket, and the subsequent travel by Lena Mae to Kodiak, Alaska.

A jury trial was had and appellant and Lena Mae Wilkins were both found guilty of both counts. Lena Mae Wilkins was given two years on each count, the counts to run concurrently, but one year was suspended. James Yokely was given 5 years on each count, the counts to run concurrently. Only Yokely appeals.

### The Appeal

Appellant argues several reasons for a reversal but we need only discuss his argument that reversible error was committed when the trial judge admitted into evidence an extra-judicial assertion of his alleged co-conspirator, Lena Mae Wilkins, made on September 7, 1954.

The government concedes in its brief that should it be held that the statement made by the co-conspirator was inadmissible as to appellant then there is not sufficient evidence to support the conviction.

Dates are very important in this case. The indictment did not charge a general conspiracy continuing over a period of time but rather charged two specific conspiracies and in the overt acts of each count, specific dates were set forth. One conspiracy was alleged to have been entered into on April 8, 1954, and the other on April 13, 1954. One count alleged the acts of prostitution were to occur in Fairbanks, Alaska, and the other count alleged the acts were to occur in Kodiak, Alaska.

At the trial the government presented evidence to show that Lena Mae Wilkins returned to Anchorage, Alaska, on or about May 13, 1954. The statement

made by Lena Mae to an agent of the F.B.I. was given on September 7, 1954 in Anchorage.

■ At the trial when the statement made by Lena Mae Wilkins was brought into discussion both counsel for Wilkins and Yokely objected to its introduction. We find without merit the claim of the government that appellant did not make a specific objection at the correct time or demand a ruling by the court and thus he waived any right to complain now. It is true that when appellant first objected his objection was premature but in ruling the judge said:

"The Court: That was the point I made some time ago. We are arguing about something we don't even know at this time and I felt it was premature. However, it is just as well we have argued it out and come to a conclusion on the matter. Are you through now?"

The objection was then overruled. There was later an objection made to the statement because it was alleged that Lena Mae Wilkins was drunk when she made the statement. But this objection was examined by the court and witnesses were presented by both sides. Finally, the statement was admitted into evidence and read to the jury. We find the following statement by the judge just before the statement was admitted:

"The Court: It may be admitted in evidence. Let the record show counsel have had a chance to see, also they object to its admission, and the court has already ruled on the admissibility thereof."

Thus there were two objections to the admissibility of the statement. Both were rejected by the trial judge. We are of the opinion that the reasons for requiring counsel to object and demand a ruling are sufficiently met under the circumstances of this case.

■ When the statement was read to the jury the judge in no way qualified its admission so as to limit it to the declarant, Wilkins. In fact an exhaustive study of the transcript convinces us

that the judge had an incorrect understanding of the law as to admission of a statement of one co-conspirator against the other. The judge apparently thought that the case of Simpson v. United States, 9 Cir., 289 F. 188, 190, as urged by counsel for the government, stood for the proposition that an admission or a statement of a defendant subsequent to the termination of the conspiracy is admissible as against both conspirators if the facts contained in the statement are concurrent in time or relate back to the conspiracy. Counsel for appellant tried to correct this erroneous understanding of the law by pointing out to the court that in the Simpson case the statement was admitted only because it was made *before* the conspiracy had terminated. We find the following comments in the transcript of record:

"Mr. Buckalew: I think I have met it, your Honor, because from the case that he [government counsel] cited [Simpson v. United States] to the court it seems to me that the conspiracy had not terminated.

"The Court: Well, the court takes a different view."

We also take a different view than does the Court. We have closely read the Simpson case and find that the majority opinion clearly allowed the statement into evidence only because the conspiracy was a continuing one and had not ended when the statement was made. It was expressly pointed out in the case that the conspiracy was not one for a single voyage (in the instant case for two single trips) but a general conspiracy to depart from Ketchikan, Alaska, to "foreign waters" to secure a cargo of liquor and then return " 'to ports in the territory of Alaska.' " The court specifically said: "There is no evidence whatever that on the morning following the capture of the Sylph any of the parties to the conspiracy had abandoned the common purpose."

We are of the opinion that the case of Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593, requires a

reversal of appellant's conviction. The Court in Lutwak first refused to agree with the government that in every conspiracy there is implicit an agreement to collaborate to conceal the conspiracy. Thus in the instant case the conspiracy charged could not have lasted beyond the date Lena Mae Wilkins returned to Anchorage, Alaska (May 13, 1954). Therefore her statements on September 7, 1954 were made *after* the conspiracy had terminated. In Lutwak it is further said, 344 U.S. at page 617, 73 S.Ct. at page 489:

> "Declarations of one conspirator may be used against the other conspirator not present on the theory that the declarant is the agent of the other, and the admissions of one are admissible against both under a standard exception to the hearsay rule applicable to the statements of a party. Clune v. United States, 159 U.S. 590, 593, 16 S.Ct. 125, 126, 40 L.Ed. 269. See United States v. Gooding, 12 Wheat. 460, 468–470, 6 L.Ed. 693. But such declarations can be used against the co-conspirator only when made in furtherance of the conspiracy. Fiswick v. United States, 329 U.S. 211, 217, 67 S.Ct. 224, 227, 91 L.Ed. 196; Logan v. United States, 144 U.S. 263, 308–309, 12 S.Ct. 617, 36 L.Ed. 429. There can be no furtherance of a conspiracy that has ended. Therefore, the declarations of a conspirator do not bind the co-conspirator if made after the conspiracy has ended."

It is also said in Lutwak, 344 U.S. at page 618, 73 S.Ct. at page 489, that "declarations or admissions of a conspirator made in the absence of the co-conspirator, and not in furtherance of the conspiracy, may be admissible in a trial for conspiracy as against the declarant to prove the *declarant's* participation therein. The court must be careful at the time of the admission and by its instructions to make it clear that the evidence is limited as against declarant only. Therefore, when the trial court admits against all of the conspirators a relevant declaration of one of the conspirators after the conspiracy has ended, without limiting it to the declarant, it violates the rule laid down in Krulewitch. [Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L. Ed. 790]. Such declaration is inadmissible as to all but the declarant."

Therefore since the government admits that without the Wilkins statement there is insufficient evidence to support a conviction of appellant we must here reverse.

We add that the instructions given by the trial court did not cure the prejudicial admission. The government wanted it left to the jury to determine whether or not the conspiracy had ended. We are of the opinion that the government in the instant case can not circumvent the dangers of allowing such hearsay statements to go into evidence by merely alleging that it was a question for the jury as to when the conspiracy ended, and should the jury determine that the conspiracy ended before the statement was made then they should disregard the effect of the statement as to the other conspirator and confine its use solely to determining the guilt of the declarant. In the instant case such a procedure would be highly prejudicial because of the specific conspiracy charged and the fact that there was no evidence to show a continuation of that conspiracy at the time of the statement. In fact the evidence was clearly the other way.

Judgment reversed.